# Pittsburg's Appeal.

1. Under 19th section of Act of January 6th 1864, relating to municipal liens in Pittsburg, a judicial sale, if there be enough realized to pay such liens, divests them, and they are to be paid from the proceeds in preference to prior liens.

2. The findings of an auditor are to be set aside only for clear errors of fact or law.

3. The Act of January 6th 1864, section 19, construed.

4. Allegheny City's Appeal, 5 Wright 60; City of Pittsburg's Appeal, 4 Wright 455; considered and distinguished.

November 8th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the District Court of *Allegheny county:* No. 200, to October and November Term 1871.

The proceedings in this case were upon the distribution of the proceeds of the sheriff's sale of the real estate of Davis P. Hatch.

The defendant's real estate had been sold under judgments secured by mortgages, and after the payment of those liens the balance of the proceeds was brought into court and referred to F. M. Magee for distribution.

It appeared that Samuel Stitt recovered judgment against Hatch on the 20th of February 1868, for $250.

Samuel McKinley on the 12th of June 1868 entered a mechanic's lien for $702 against the property sold by the sheriff.

Herlehy & Johnston on the 21st of August 1869, entered three mechanics' liens, amounting together to $951.84, against the same property.

The city of Pittsburg to November Term 1869, and January and April Terms 1870, entered eight municipal claims against the

same property for paving, grading, &c., commenced at different periods, viz.: in June, August, September, November and December 1869, and in 1870.   These liens were entered by virtue of the Act of January 6th 1864, Pamph. L. 1131.

The 6th section of that act authorizes the councils of the city to grade, pave, &c., the streets, and collect the costs from property abutting on the streets.

By section 19, " The assessments authorized by this act shall be liens upon the properties assessed, from the commencement of the improvements, for which they were made, and shall, if filed within six months after the completion of said improvements, continue liens for five years, and be revived by a scire facias as other liens; if, on any sheriff's sale, or other judicial sale, enough be not realized to pay off the lien, it shall continue to be a lien until the whole amount, with the costs, be paid in full."

In his report the auditor says: " * * * The claims of Herlehy & Johnston for plumbing, &c., were for work done after the completion of the houses, and of course date from the day the work was commenced, and are not reached by the fund in court.   The buildings were commenced by Hatch in 1867.   The lots on which they were erected were within the territorial limits of the late borough of Lawrenceville; they were commenced before consolidation with the city of Pittsburg was effected, long before the water and gas pipes were taken to that part of town, and before there was any reasonable probability that water and gas would be taken there soon.   The plumbing work done by Herlehy & Johnston was, in the opinion of the auditor, an afterthought on the part of Hatch, and not on a par with work done and material furnished during the progress of the buildings." * * *

There were other claims made on the fund not necessary to notice here.

After the payment from the funds, of city and county taxes, a municipal claim about which there appeared to be no dispute, costs and the expenses of the audit, there remained for distribution the sum of $2404.92.   Of this the auditor awarded $1988.94 to the city of Pittsburg on account of their municipal claims, deciding " that liens of this character are divested by a judicial sale of the property, so far as the money realized from the sale will pay the same."

The remainder of the fund, $415.98, he awarded to Samuel McKinley on account of his mechanics' lien.

Amongst others, Herlehy & Johnston filed exceptions to the auditor's report:

1. That the auditor had decided that their lien dated from the commencement of the *work*, and not from the commencement of the *houses*.

2 and 3. That he had given priority to the municipal claims

of the city of Pittsburg, and therefore awarded to the city $1988.94 in preference to preceding liens.

On the hearing of the exceptions the court (Hampton, P. J.), without delivering an opinion, made the following decree:—

"And now, September 30th 1871, the exceptions filed by Herlehy & Johnston in this case are sustained, and it is hereby ordered and decreed that of the amount awarded by the auditor to the city of Pittsburg, the sum of $446.75 be awarded to Samuel McKinley, on mechanics' lien, No. 103, September Term 1868, and the sum of $951.84 be awarded to Herlehy & Johnston, on mechanics' liens 56 and 57, November Term 1869, and all other exceptions are overruled, and the amount so awarded to the city of Pittsburg is reduced to the sum of $590.26."

The city of Pittsburg appealed to the Supreme Court, and assigned the decree for error.

*J. F. Slagle*, for appellant.—The Act of February 3d 1824, relating to municipal claims in Philadelphia, is similar to the Pittsburg Act, and under its provisions it has been decided that such claims were payable from the proceeds of a judicial sale in preference to prior liens: North'n Liberties *v.* Swain, 1 Harris 113; Perry *v.* Brinton, Id. 202; Allegheny City's Appeal, 5 Wright 60.

*Kerr & Guthrie*, for appellees, cited City of Pittsburg's Appeal, 4 Wright 455.

The opinion of the court was delivered, January 9th 1872, by

THOMPSON, C. J.—I was greatly surprised at finding the decision in the appeal of the City of Pittsburg, 4 Wright 455, cited as authority in a case entirely outside of its circumstances. That decision was rested upon and under the provisions of an Act of Assembly of the 18th April 1857, entitled an act "concerning the setting of *curbstones* and the paving of *side-walks* in the city of Pittsburg: Pamph. L. 1857, p. 240. To that act, with a simple reference to a section or two in the Act of 1858, on the same subject, considered as forming a system on the subject-matter of the act, does our opinion apply. It had no reference or express bearing on any of the enactments for *grading and paving streets*. The decision was predicated of the 8th section of the Act of 1857, which provides "that the lien of such claim, (paving and grading side-walks), shall not be divested by any *private or judicial* sale, but shall remain a lien on the premises." Paving and curbing side-walks was the theme of the discussion at bar, and consequently was so the opinion subsequently delivered; and if it has been held for anything else, it was a mistake, which we think even a cursory reading of it might have prevented.

I think we might complain without injustice, that the report of the auditor and the opinion of the court below are so abstract,

that it is not easy to comprehend the views of either on the great question of the case, and with which they ought to have been especially familiar, being their local laws. We must take them as we find them, however.

The difference between the learned auditor and the court below was, whether the judicial sale of the premises in question on mortgage judgments divested the municipal liens on the premises entered subsequently. The auditor held that it did, and applied the money in court to these liens in preference to other prior liens. The court set aside the report of the auditor so far as this was concerned, and it is said on the authority of the case in 4 Wright, *supra.*

We must decide upon this contrariety of opinion by the provisions of the Act of 1864 exclusively, for on this point its provisions supersede all others, being the last, and also expressly providing a repeal of inconsistent acts and parts of acts.

The material provision in regard to the question in hand is contained in section 19th of the act, and is as follows.: "The assessments authorized by this act shall be liens upon the properties assessed from the commencement of the improvements for which they were made, and shall, if filed within six months after completion of said improvements, continue liens for five years, and be revived by scire facias, as other liens. If on any sheriff's sale, or other judicial sale, enough be not realized to pay off the lien, it shall continue to be a lien until the whole amount with the costs be paid in full."

This is explicit language, and is in accordance with the practice, excepting in special cases in this Commonwealth. Generally judicial sales divest all liens. But the legislature in its wisdom thought proper to enact at least the equivalent of the provision contained in the Act of 1824, "that the assessment should be and remain a lien until paid and satisfied," by the clause quoted above, "that if on any judicial sale enough was not realized to pay off the lien, it shall continue to be a lien until the whole amount shall be paid with costs." This provision corresponds with our decision in 1861 upon the Act of 1827: Allegheny City's Appeal, Tassey's Estate, 5 Wright 60. We held that the words quoted, meant, that if enough to pay off the liens were not realized by the sale, the unextinguished balance continued to be a lien. I have no doubt but this decision led to the terms used in the clause in the Act of 1864, which we have quoted. Neither of these acts mean that other and prior liens being first paid, and the balance being insufficient to pay the municipal claims, they will remain a lien. The words of the Act of 1864, like its predecessor, are too explicit for this, and plainly mean that if on any judicial sale enough be not raised to pay off the assessment-lien, not prior and other liens, then it, the balance, shall remain a lien. This accords with the decision in 5 Wright, *supra.*

20 P. F. SMITH—10

This is complained of, and it does seem to militate against the maxim, *prior in tempore, potior est in jure*.  But it ought to be remembered that these provisions are parcel of a system devised for the collection of taxes and assessments, in which the public is interested.  Tax laws often disregard individual equities in favor of the public demands.  It is a provision also, to relieve the public from contests about priority in distribution, which often vex the citizen and perplex the courts.  The preference here noticed is but another form from that found in 4 Wright *supra*, and is regarded, if I comprehend the cases of Northern Liberties *v.* Swain, 1 Harris 113, and Perry *v.* Brinton, Id. 202, as all right under the Act of 1824.

It was argued, with much plausibility, that the words of the 19th section of the act, that the assessments mentioned " shall be liens from the commencement of the improvements," *ex vi termini*, imports that those prior in date must have priority in the distribution of the proceeds on a sale of the property.  That result would follow under the general law of distribution.  But here is a special provision, as quoted above, which controls the general law in its application to this particular case.  It means something, and if that meaning be properly deduced from the words used, and not obnoxious to constitutional objections, it must have effect.  We think that the meaning is what we have already assigned to the words, and that the provision from which a different meaning is sought to be deduced by the argument was introduced simply to define the duration of the lien.  No doubt if not revived within five years the lien would be gone.  That the public must look to.  But it is solely a question of distribution we decide here.

Without entering upon a calculation to ascertain how this view would leave the claims of Herlehy & Johnston, supposing any money might remain after satisfying the municipal claims, we cannot see on what grounds the *à priori* objection raised by the auditor that they had no liens at all was disposed of.  These liens were " for plumber's work done and materials furnished within six months past, for and about the *erection and construction* of the buildings hereafter described."  They were not liens for repairs, alterations or additions, which might have saved them, but for work and materials furnished in the construction of the buildings.  These are not equivalent provisions, and we could not possibly hold that materials furnished for repairs, &c., were to be regarded the same as if furnished in the construction of the buildings.  The auditor found that the buildings had been finished long before the work, &c., done by Herlehy & Johnston was begun.  We see no error in this finding on the evidence, and the result is, it could not legally be set aside by the court.

It is only for clear error in fact or law that the finding of an auditor is to be set aside.  Decisions to this effect are so nume-

rous that I need not cite them. It would have greatly aided us, if the learned judge of the District Court had accompanied his judgment with his reasons. Taking the case as we have it, however, we think this another reason for reversing the decree of distribution in the case.

Now, to wit, January 8th 1872, it is considered and adjudged that the decree of the District Court be reversed and set aside, and that a formal decree be entered in the court below in accordance with the finding of the auditor, and that the costs of this appeal be paid by the appellees.